Donald R. **REBSTOCK,** Appellant,

v.

**STATE of Indiana,** Appellee.

No. 382S113.

Supreme Court of Indiana.

Aug. 11, 1983.

John F. Davis, Mary Jane Humphrey, Evansville, for appellant.

Linley E. Pearson, Atty. Gen. Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Defendant-appellant, Donald R. Rebstock, was convicted by a jury of burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1979 Repl.), and criminal deviate conduct, a class A felony, Ind.Code § 35–42–4–2 (Burns 1979 Repl.). He received consecutive sentences of six years for the burglary and twenty years for the criminal deviate conduct. In this direct appeal, he raises three issues for our consideration:

(1) Whether there was sufficient evidence of the intent element of these offenses to support the jury's verdict.

(2) Whether the trial court erred by allowing the prosecutor to introduce a copy of a docket sheet entry into evidence rather than requiring the production of the corresponding entry in the court's order book.

(3) Whether the trial court erred by admitting certain testimony of a witness on redirect examination.

The evidence most favorable to the verdict reveals that the victim, a twenty-four year old respiratory therapist, left work at 11:30 p.m. on Friday, May 15, 1981. On her way home she experienced car trouble and defendant stopped to offer help. When defendant was unsuccessful in repairing the car, the victim accepted his offer of a ride home. When they arrived at her house, the victim invited the defendant inside to wash his hands. After talking for awhile, defendant fell asleep on the victim's couch, but the victim roused him and he left.

On Monday, May 18, 1981, the victim was awakened at 5:30 a.m., by a hand on her arm and a gun at her head. A masked man wearing gloves asked her if she wanted to live. He tied her hands behind her back

with a cord torn from an iron and forced her to perform oral sex on him. He then untied her hands and ordered her to lie on her back. When he heard a noise at the window he had climbed through to gain entry, he cautioned her not to give anything away if someone entered, positioned one of his legs over her to restrain her and fell asleep. Several minutes later the victim extricated herself without awakening him and ran to a neighbor's house where the police were summoned.

The police returned with the victim to her house and discovered the defendant asleep in the victim's bed. When they threw back the covers, the defendant appeared to reach for the pistol laying by his hand. The police grabbed him and handcuffed him. The mask, gloves and gun were recovered.

### I.

■ Defendant first contends that there was insufficient evidence of his intent to support the jury's verdict. In reviewing claims of evidentiary insufficiency, this Court neither weighs the evidence nor resolves questions of credibility, but only looks to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. If from that viewpoint there was evidence of probative value from which a reasonable trier of fact could conclude that a defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Taylor v. State,* (1973) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657.

Indiana Code § 35–43–2–1 (Burns 1979 Repl.) provided in pertinent part:

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary . . . ."

Indiana Code § 35–42–4–2 (Burns 1979 Repl.) states in part:

"A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when:

(1) The other person is compelled by force or imminent threat of force . . . commits criminal deviate conduct. . . ."

Defendant argues that he was suffering from a "drug interaction reaction" at the time of the offense and therefore was unable to form the intent specified by these statutes to commit these crimes. During the evening and early morning before the offense he had been drinking and had taken several muscle relaxant pills that had been prescribed for his back pain. He claims that the combined effect of the alcohol and prescription medicine rendered him unable to remember anything between the time he was driving around at 4:30 a.m. on May 18th and when the police handcuffed and arrested him several hours later.

■ Where the State must prove, as here, that the defendant had a specific intent, mental incapacity to form that intent, whatever the cause, is a defense. *Shackelford v. State,* (1976) 264 Ind. 698, 349 N.E.2d 150. Whether this incapacity existed or the necessary intent was present is a question of fact for the jury to determine. *Greider v. State,* (1979) 270 Ind. 281, 385 N.E.2d 424; *Shackelford, supra.* From the evidence that defendant was able to locate the victim's home after having been there only one time previously, that he knotted a t-shirt to form a mask and put on gloves, and that he bound his victim and reached for his pistol upon his apprehension by the police, the jury was warranted in inferring that defendant had the required state of mind. Even if they believed he had suffered from some degree of "drug interaction reaction," they could still find that he was able to form the requisite intent because he was able to formulate and carry out this detailed plan. There was sufficient evidence of intent to permit the jury to find that defendant was guilty beyond a reasonable doubt.

### II.

The defendant testified in his own defense and admitted on direct examination that he had been previously convicted of a felony for which he served three months on

a work release program. On cross-examination when it appeared as if defendant was equivocating about his guilt of the felony, the prosecutor offered to introduce into evidence a copy of a 1977 docket sheet entry of the Vanderburgh Circuit Court, apparently to attempt to show that defendant pleaded guilty to the felony charge with knowledge that he would serve some time in jail. This was in response to defendant's suggestion that he was not guilty of that crime but pleaded guilty because he believed that by doing so he would avoid imprisonment. Defendant objected to the introduction of this docket sheet, arguing that it was not the "best evidence." He claims that he was greatly prejudiced when the trial court admitted the docket sheet rather than requiring the corresponding order book entry.

Assuming, *arguendo,* that admission of this docket sheet was error, we fail to see how it served to deny the substantial rights of the defendant. The defendant has the burden of showing how his substantial rights were prejudiced. *Duncan v. State,* (1980) Ind., 412 N.E.2d 770. As we stated in *Smith v. State,* (1982) Ind., 432 N.E.2d 1363, 1368:

> "[A]lthough a trial may not be free from error, every error of the trial court does not require that the case be reversed. Only when the error has caused prejudice to the defendant is there cause to reverse."

Defendant had acknowledged his guilt of this prior felony on direct examination and testified he had served three months of his sentence. He failed to demonstrate how he was prejudiced by the admission of the docket sheet entry other than to vaguely assert that there was a possibility that that entry was incorrect. The question of whether he knew he would serve some time in prison by pleading guilty to the offense is immaterial to the issue of his guilt of the instant offense. We find that even if there was error in the admission of this evidence, that error was harmless.

### III.

Defendant finally argues that there was error in the admission of certain testimony of the victim on redirect examination. On direct examination, the victim testified that the defendant had bound her wrists with a cord ripped from an iron that was at her bedside. On cross-examination, defense counsel asked the victim if the defendant had untied her. He further questioned her about whether she desired or suggested this confinement.

The victim was then asked by the prosecutor on redirect examination whether she had examined her hands and wrists after she escaped from the defendant or at any time later that day. She replied that a policeman had noticed that her wrists bore red marks from being tied and that he had taken photographs of her hands and wrists. She further testified that she had done nothing to her hands and wrists between the time the defendant untied her and the photographs were taken. Defense counsel objected to this testimony because, he argued, it was not brought up in response to any new matter elicited on cross-examination.

The scope and extent of redirect examination is a matter within the sound discretion of the trial court, and we will not disturb the court's ruling absent an abuse of that discretion. *Hedges v. State,* (1982) Ind., 443 N.E.2d 62; *Dooley v. State,* (1981) Ind., 428 N.E.2d 1; *Woodford v. State,* (1980) Ind., 405 N.E.2d 522. This testimony was properly admitted on redirect examination to meet any implications raised during cross-examination that the victim consented to or requested this treatment. Furthermore, the pictures of the victim's wrists were later admitted into evidence without objection during the testimony of the officer who took them. There was no abuse of discretion in the admission of the victim's testimony on redirect examination.

The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.