**Daniel Roger MULLIGAN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 484 S 146.**

Supreme Court of Indiana.

Jan. 27, 1986.

---

1. This case was inadvertently omitted from the official Indiana Reports.

John R. Stanish, Hammond, for appellant.

Linley E. Pearson, Atty. Gen., Latrialle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Daniel Roger Mulligan was convicted by a jury of burglary, a class B felony, and of attempted burglary, also a class B felony. He received twelve years for each conviction, to be served concurrently.

Appellant raises five issues in this appeal:

(1) Whether his drug consumption rendered his confession involuntary;

(2) Whether the trial court erred by allowing counsel to forego transcription of voir dire;

(3) Whether an officer's testimony regarding information received from a

radio dispatcher constituted inadmissible hearsay;

(4) Whether photographs were erroneously introduced into evidence and impermissibly allowed in the jury room during deliberations; and

(5) Whether the evidence is sufficient to sustain his convictions.

We affirm.

These are the facts which tend to support the trial court's judgment. At 9 a.m. on January 11, 1983, Janet La Rose left her house at 317 Belden Place; all the doors and windows were locked. Returning home at 11 a.m. for lunch, she noticed a blue, four-door car with a black vinyl roof parked in front of her house and she observed a man walk away from the side of her house and get into the blue car. The rear basement window of her house was open and the dryer vent was broken. The back door frame had been pushed two inches from the wall and there were pry marks on and around the door.

Marcia Miller lived at the opposite end of the block. On January 11, 1983, she left her home, doors locked, at 9:30 a.m. She came home at 1 p.m. to find police at her house. Someone had broken in through the door to an attached garage. A video recorder, Coleco game and two remote controls were determined to be missing.

Officer John Tsolakos had been directed to investigate a possible burglary in progress at the La Rose house, but when he arrived on the scene there were already officers present, so he began patrolling the area. Radio dispatch advised that a blue, full size, older model car with a white male driver might be involved. One block from the burglary site he observed this vehicle. Tsolakos began to follow it and advised other units of his location and requested back-up. He gave a description of the vehicle and the license plate number to the police dispatcher. Officer Tsolakos stopped appellant after learning that the license plate did not match the vehicle. He observed a video machine and other television apparatus on the back seat of this car. Tsolakos identified Mulligan in court as the person he stopped and apprehended.

Officers Pestikas and Abbott interrogated appellant at the police station and Mulligan gave a full confession to the crimes charged. Other items of evidence included an eleven-inch metal pry bar, removed from appellant's car when he was apprehended, and photographs of pry marks which were on and near the door of the victim's residence.

### I. Confession

Appellant argues that the trial court should have suppressed his confession. He claims that he was under the influence of heroin when he gave his statement and therefore maintains that his confession was not made voluntarily.

At the hearing on the motion to suppress the confession, Officer Steve Pestikas testified that he advised appellant of his *Miranda* rights before commencing interrogation. Appellant signed the *Miranda* rights form, a waiver form, and his completed statement. Pestikas had previous experience with drug addicts and testified that Mulligan did not display any of the symptoms of an addict and did not appear to be under the influence of drugs at the time. Officer Michael Abbott was also present during appellant's interrogation. He testified that appellant did not appear to be suffering from withdrawal at the time he gave his statement.

Mulligan testified at the suppression hearing that he had been addicted to heroin for the past eight to ten years, that he had injected an $80 gram of heroin at 6 a.m. that morning, and that he was under the influence of heroin at the time he gave his statement. He also testified that his addiction necessitated an average daily consumption of $200–$500 worth of heroin. The waiver was signed at 3:30 p.m. and the statement was signed at 5:30 p.m.

The trial court denied the motion to suppress, noting that Mulligan's own testimony indicated that his mental faculties were adequate since he could recall the conversation "right down to the last word."

■■ Mulligan has the burden to introduce evidence to establish that the amount and nature of the heroin consumed would produce an involuntary statement. *Buck v. State* (1983), Ind., 453 N.E.2d 993. While appellant testified that he injected an $80 gram of heroin early that morning, he did not waive his rights and give a statement until late afternoon. Moreover, Mulligan would ordinarily consume several hundred dollars worth of heroin each day. Neither interrogating officer observed any symptoms of drug usage or withdrawal, although each was familiar with behavior indicative of both conditions. The evidence does not indicate that Mulligan's claimed drug consumption resulted in an involuntary statement.

## II. Voir Dire

Appellant argues that the trial court erred by allowing counsel to forego appellant's right to have voir dire proceedings transcribed. He claims that the absence of the court reporter during the examination of prospective jurors now prevents him from adequately presenting as an issue one juror's knowledge of Mulligan's family.

When the trial judge inquired whether there was any objection to excusing the court reporter during voir dire, both defense and prosecution indicated they had none. After presentation of the evidence had commenced and Mulligan's confession had been read to the jury, there was a recess. During this recess juror White told the judge in the hallway that he recognized the appellant's father as a man whom he had known for a number of years and assumed that the defendant was his son. White was not a close personal friend of Mr. Mulligan but they had met at social affairs and White had several mutual friends with the Mulligan family. The trial judge questioned White outside the presence of the jury. At this hearing, White stated he could still honor his oath to try the case and render a true verdict in accordance with the law and evidence presented. The State and the defendant did not utilize this opportunity to question White.

The State moved to exclude White and allow the alternate to sit. Defense counsel argued that if White is excluded the only proper recourse would be to grant a mistrial. The trial court denied the mistrial motion and the motion to exclude White.

Appellant essentially challenges the competency of his attorney to make the decision to forego recording voir dire. However, we fail to see how trial counsel's decision shows incompetency or how his decision was harmful to the appellant. Mulligan's claim of incompetency is presumably predicated upon the juror's familiarity with the appellant's father. It is unclear from the record whether this juror's relationship to appellant's father would have been revealed during voir dire since it appears that White alerted the trial judge to this acquaintance shortly after seeing Mr. Mulligan sitting in the gallery. In any event, a hearing on this issue was immediately held by the trial court and both attorneys were provided an opportunity to question White.

■■ If appellate counsel believes that review of voir dire by this Court might aid his client, counsel could have prepared a statement of the unrecorded voir dire proceedings to submit for appellate review. Ind.R.Ap.Pro. 7.2(A)(3)(c). This appellate rule provides a means for presenting evidence or testimony when no record was made or when the transcript is unavailable. Failure to comply with this rule operates as a waiver of any alleged error attributed to nonrecordation. *Craig v. State* (1980), 273 Ind. 361, 404 N.E.2d 580.

■■ Alternate jurors were available to replace White, but trial counsel chose to object to the substitution. On appeal, Mulligan has failed to provide us with any record or even any explanation to indicate how he was harmed by this choice. Hence, we decline to reverse his conviction on the basis of this issue.

### III. Hearsay

Appellant argues that the trial court erroneously permitted hearsay evidence of the commission of an unrelated offense.

 Officer Tsolakos testified at trial that he noticed a car which matched the description of the vehicle which was possibly involved in the burglary and attempted burglary. He then called in the license plate of this vehicle on his police radio. When the prosecutor asked what information the police dispatcher then relayed to him, counsel for appellant objected to the question on hearsay grounds. The State responded that the testimony was not being offered as evidence for the truth of the matter asserted but merely to explain to the jury why the officer proceeded to stop the vehicle. The court allowed the officer to testify that the license plate was registered to a Daniel R. Mulligan for a yellow Ford. The officer further testified that the license plate did not match the vehicle he was driving and that this was a violation of the traffic laws. Testimony about a radio transmission is not hearsay when it is offered to explain an officer's actions subsequent to receiving the dispatch rather than to prove the truth of the matters asserted. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. The trial court's ruling was correct.

### IV. Photographs

Appellant argues that the trial court erroneously permitted the introduction of photographs. This argument is predicated upon two claims: first, that the exhibits should not have been introduced into evidence at his trial, and, second, the exhibits should not have been allowed into the jury room during deliberations.

At trial, Officer Abbott testified that he took photographs of the vehicle appellant was driving at the time he was apprehended. Abbott identified State's Exhibits 19, 20, and 21 as the photographs of the vehicle which he took on January 12, 1983. He made notations of the back of these photographs, initialed them, and then placed them in the file. In court Abbott identified these exhibits, his initials, and

the handwritten or typed notations. On the back of each photograph Abbott had written or typed the following information:

(1) Date and case number;
(2) "Black vinyl/blue 1969 Buick 4 door bearing 1983 Indiana 96C7950; plate issued to Daniel R. Mulligan on a yellow 1972 Ford 2DR;"
(3) "Vehicle suspect Daniel R. Mulligan was arrested in + which contained property stolen from the residence of Maria Miller."

These notations imply that appellant violated a traffic regulation and indicate that he had stolen property in his possession when he was arrested.

Officer Tsolakos testified that he apprehended appellant after he received a radio dispatch that his license plate did not match the vehicle he was driving. We concluded earlier that this testimony was admissible for the limited purpose of explaining the officer's subsequent actions. This notation on the back of the photograph was not limited in any way by the State and raises the implication of the violation of a minor offense.

 Admitting direct evidence of another unrelated offense is error. However, when the unrelated offense is minor and unlikely to weigh appreciably against the defendant, this Court does not regard it as so prejudicial as to require a reversal. *Haun v. State* (1983), Ind., 451 N.E.2d 1072.

 Appellant also objected to these exhibits because the notations indicated that he was arrested while driving a vehicle which contained stolen property. He maintains that any conclusions drawn from these facts would be prejudicial.

Prior to the admission of these exhibits the jury heard the following evidence. First, Marcia Miller testified that a video recorder, Coleco game with a modular set and two remote controls were removed from her house on January 11, 1983. Miller identified her property at the police station. She signed a release form which

listed the property and the serial numbers before receiving her property from the police. She identified in court a photographic exhibit of the items which were stolen and later recovered by the police. Second, Officer Tsolakos testified that when he apprehended appellant he found this video machine and other television apparatus on the back seat of his car. Third, appellant's confession recited that he entered a residence on Belden and removed a VHS, Coleco game, television remote control, VHS remote controls, and game tapes. He stated that he put these items in his car, a 1969 blue, four-door Buick with a black top.

The jury had already been presented with direct evidence which was identical to the arrest notation. Appellant has not indicated how his substantial rights were prejudiced. *Rebstock v. State* (1983), Ind., 451 N.E.2d 1083.

 Appellant also claims that the trial court erred by allowing these exhibits to be brought into the jury room during deliberations. Allowing the jury to view exhibits during deliberations is a matter within the trial court's discretion. *Jackson v. State* (1980), 274 Ind. 297, 411 N.E.2d 609. The following criteria are considered by the trial court when exercising this discretion:

(1) Whether the material will aid the jury in a proper consideration of the case;

(2) Whether any party will be unduly prejudiced by submission of the material; and

(3) Whether the material may be subjected to improper use by the jury.

The photographs could assist the jury's consideration of the case in determining whether the car in which appellant was apprehended matched La Rose's description. She testified that a car was parked in front of her house and then driven away by a man who had exited from the side of her house. Moreover, the jury was allowed to review these exhibits during the trial. While appellant did not object to this viewing he did object to the exhibits being sent to the jury room. We fail to see how the jury could have used this evidence improp-

erly or how Mulligan could have been unduly prejudiced by their submission to the jury.

V. Sufficiency of the Evidence

Appellant claims that the trial court should have granted his motion for a directed verdict based upon the insufficiency of the evidence.

In reviewing claims of insufficient evidence this Court neither weighs the evidence nor resolves questions of credibility. Rather, we look to the evidence and the reasonable inferences therefrom which support the verdict. If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt we will affirm the conviction. *Rebstock v. State* (1983), Ind., 451 N.E.2d 1083.

 In this case, Mulligan gave a full confession to the crimes charged. However, we find the evidence is sufficient to sustain his convictions even absent the confession. Both victims testified that their houses were locked when they left that morning. Yet, upon return to their houses there were visible signs of forced entry. Miller testified about the property which was removed from her house and how she subsequently recovered her property from the police after signing a release form. In addition, Miller identified in court a photograph of her stolen property. La Rose testified that she saw a man exit from the side of her house and enter a blue car which was parked in front of her house. Officer Tsolakas was patrolling near Belden Place before noon on January 11, 1983, when he observed and subsequently apprehended appellant who was driving a blue car. When he stopped appellant he observed a video machine and television apparatus on the back seat of the car. The evidence is sufficient to sustain his convictions.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK, and DICKSON, JJ., concur.