Reginald J. DORSEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 883S303.

Supreme Court of Indiana.

March 11, 1986.

Rehearing Denied May 7, 1986.

⚷59

Anthony V. Luber, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a jury conviction for burglary, a class B felony, Ind. Code § 35–43–2–1 (Burns 1985 Repl.) and two counts of conversion, a class A misdemeanor, Ind.Code § 35–43–4–3 (Burns 1985 Repl.). Defendant-appellant, Reginald J. Dorsey, was sentenced to a prison term of twelve years.

Appellant raises nine issues on appeal: (1) Whether the trial court erroneously denied his motion to dismiss which was based

upon noncompliance with the Interstate Agreement on Detainers; (2) Whether the trial court erred by granting both the State's motion for continuance and consolidation of offenses for trial; (3) Whether the trial court erred by refusing to take judicial notice of the dates the charges were filed; (4) Whether the trial court erred by denying his motion to strike the State's rebuttal evidence which had not been disclosed pursuant to a discovery order; (5) Whether the trial court allowed the introduction of impermissibly tainted identification testimony; (6) Whether the trial court's ruling on instructions regarding witness credibility, accessory liability, included offenses, and sources of law was in error; (7) Whether the identification evidence is sufficient to sustain his convictions; (8) Whether the trial court erred by entering judgments on inconsistent jury verdicts; (9) Whether the trial court erred in the calculation of pretrial credit.

These are the facts which tend to support the determination of guilt. On May 18, 1981, both the Goodin home and the Birkey home were burglarized. Hurbert Goodin returned home to find his back door, which had been locked before his son left home that morning, had been kicked in. He determined that the following items were missing: his son's stereo equipment, his daughter's jewelry box, and his daughter's jewelry tree with necklaces. Goodin reported the crime.

Later that afternoon the police asked Goodin to come down to the station to see whether he could identify property which was recovered from co-defendant's impounded car. Goodin identified the jewelry, jewelry box, and stereo components which had been stolen that morning.

When Wayne Birkey returned home at noon on May, 18, 1981, he observed a car backed up in his driveway to the front door of his house. He then saw appellant and co-defendant Neely come out of his house. Appellant shut the trunk lid of the co-defendant's car, they jumped into the car, and then drove down the driveway toward Birkey. They drove their car across Birkey's lawn. Birkey followed the car and later saw them by their disabled car with appellant motioning to Birkey that he needed assistance.

A portable television set, two jewelry boxes, and coins were determined to be missing from the Birkey home. The master bedroom was in shambles, the drawers were out, and clothes were strewn on the floor.

Later that afternoon appellant and co-defendant went to the Powell residence and received a ride to a grocery. Sergeant Rutkowski found co-defendant's abandoned car approximately one-half mile from the Powell residence. When the car was searched items taken from the Birkey home were recovered.

Rutkowski sent latent fingerprints collected from co-defendant's car and appellant's fingerprint card which was made during booking to the FBI for examination and comparison. Elbert Lockhart, a FBI fingerprint specialist, matched four of the latent fingerprints with appellant's fingerprint card.

## I

Appellant argues that the trial court erred by denying his motion to dismiss which was predicated upon the State's failure to bring him to trial within the limits prescribed by the Interstate Agreement on Detainers.

On May 5, 1981, appellant escaped from the Michigan Correction facilities. Indiana filed the present burglary information on May 29, 1981. On June 9, 1981, appellant was in the custody of the Illinois authorities based upon outstanding warrants from Michigan and Indiana for the escape and burglary, respectively. Appellant's affidavit and demand for timely extradition and speedy trial was made on June 22, 1981. On June 26, 1981, appellant was released from Illinois custody and returned to Michigan authorities at the Kent County Jail. From June 26th until January 20, 1982, appellant was being detained by Michigan authorities while awaiting his trial. Indi-

ana filed the present theft informations on July 24, 1981. Appellant was sentenced on the Michigan escape charge on January 20, 1982. Michigan returned appellant to Indiana on May 3, 1982, and he was brought before the court on these charges two days later.

During the period of June 26, 1981, until January 20, 1982, appellant was apparently not only being detained by Michigan authorities while awaiting trial but was also serving a sentence at the Kent County Jail. However, neither characteristic of appellant's detention qualifies him as an intended beneficiary of the Interstate Detainer Agreement.

The status of a person who "has entered upon a term of imprisonment in a penal or correctional institution" is one condition precedent to invocation of the speedy trial provisions of this agreement. Ind. Code § 35–33–10–4 (Burns 1985 Repl.). This detainer act applies to persons who are already convicted and serving time in prison and does not apply to persons who are awaiting trial. *Pallett v. State* (1978), 269 Ind. 396, 381 N.E.2d 452. Appellant may not therefore invoke the provisions of this act based upon his custody status.

Appellant was apparently also serving a sentence while detained at the jail. However, this status also does not bring him within the coverage of qualified persons entitled to the benefits of this act. The purpose of this agreement is to encourage the expeditious and orderly disposition of charges outstanding against a prisoner because outstanding charges create uncertainties which obstruct the prisoner's treatment and rehabilitation programs. The act was intended to benefit persons serving time in prison. Appellant was not in prison. Therefore, the purposes of this agreement were not frustrated by the trial court's finding that appellant was not entitled to invoke the provisions of this act at the time that he filed his demand for a speedy trial.

II

Appellant claims that the trial court erred by granting both the State's motion for continuance and consolidation of offenses for trial.

While the scheduled trial date was July 12, 1982, appellant did not file notice of his alibi until July 6th. During the intervening weekend immediately before the trial the State attempted to determine what evidence would be used in support of his alibi. Pursuant to this attempt, the State became aware of co-defendant Neely's testimony that a man nicknamed "Fishman" was the male person responsible for the burglary. The State determined that Fishman's proper name was Vernon Barnett. However, the offices of the FBI and St. Joseph police were closed for regular business hours over the weekend. Therefore, the State was unable to make any fingerprint comparison to determine if Barnett was the man who participated in the crimes. The State's motion for continuance was made on the first day of the scheduled trial and was predicated upon the interests of justice insofar as appellant may not have been the person responsible.

Since appellant objected to any continuance, the court conducted a lengthy colloquy with him to determine how he might be prejudiced by a continuance based upon the potentially exculpatory evidence. The court determined that appellant's alibi witnesses would be available to testify should a continuance be granted. In addition, defense counsel acknowledged that should the fingerprint comparison result in exculpatory evidence it would be difficult to overturn a jury verdict based upon a claim of newly discovered evidence. The motion for continuance was granted.

The State had filed the burglary charge on May 29, 1981, and the theft charges on July 24, 1981. The burglary trial had been scheduled to commence on July 12, 1982, and a separate theft trial had been set for July 19, 1982. On July 12th the State moved for both a continuance and a consolidation of the offenses for trial. The continuance was granted on July 12th and joinder

was granted on the 14th. The trial was rescheduled for July 19th, which was the date on which the second trial was to commence.

Appellant argues that the motion for continuance was based upon improper and ingenuous grounds. He claims that the State would not have been able to consolidate the offenses had the continuance motion been denied.

■ Granting a motion for a continuance is a matter within the trial court's purview. In this case, the trial judge properly balanced the competing interests involved. Since the State's investigation of fingerprint exemplars could have produced exculpatory evidence, and since the alibi witnesses would be available to testify at the rescheduled trial date, and since appellant gave no concrete reason for denying the State's motion, the trial judge reached a rational result.

Appellant also contends that the consolidation of offenses was erroneous due to the possible confusion and prejudice to a defendant facing multiple charges.

■ Appellant's criminal conduct consisted of a series of connected acts which constituted a single scheme or plan and thus the burglary and theft offenses could have been joined in the same information. Ind.Code § 35–34–1–9(a)(2). Therefore, the State could move for the joinder of these related offenses for trial. Ind.Code § 35–34–1–10(b). To ensure a defendant's due process rights any such motion should be made before the commencement of trial. In this case, the submission of the case to trial was withdrawn and thus, for the purposes of consolidation, the trial had not yet commenced on July 12th.

From June 4th until July 7th the trial court heard pretrial motions. On July 12th, the State moved for a continuance and consolidation after the court inquired whether it was time to bring the jury in. At this point in the proceedings pretrial motions were still being made and considered by the trial court. Prospective jurors had not yet been subjected to voir dire

examination. The consolidation motion was granted on July 14th, which was four days prior to the rescheduled trial date of July 19th.

Since there was a rational basis for the continuance of the trial the trial court did not err by consolidating the offenses. The only prejudice which appellant attributed to this joinder was that which is inevitable in every joinder case, that is, the possible prejudice inherent when a defendant is tried for several offenses.

### III

Appellant claims that the trial court erred by refusing to take judicial notice of the dates upon which the charges were filed. He claims that the jurors would have better understood the defense witnesses' lapses in memory of the relevant alibi time periods had the jury been informed of these dates. Apparently some jurors had made some comments about delay. Appellant wanted to indicate to the jury that reasons for delay are not always attributable to defendants. The court denied appellant's request because only one juror had been concerned about delay and this was cured by voir dire.

For purposes of raising the alibi defense and collecting evidence the critical date is the date upon which the accused receives actual notice of the charges. The filing date does not establish the date an accused receives actual knowledge of the charges. There is no necessary connection between delay in the filing of charges and delay in knowing the charges.

While both crimes were committed on May 18, 1981, the burglary information was filed on May 29, 1981, and the information for two counts of theft was filed on July 24, 1981. On June 9, 1981, appellant turned himself in to Illinois authorities because of the outstanding warrants against him. This was only two weeks after the crimes were committed. While the theft counts had not then been filed they were in fact later filed alleging the same offense date. Appellant's act of surrender to the

police indicates his actual knowledge of at least the burglary charge.

■ Appellant claimed that he was in Chicago from May 6th to June 10th. His alibi defense was predicated upon an absence from Indiana for over a one month period rather than on his whereabouts for a specific period of time on May 18th. Therefore, for purposes of raising an alibi defense and collecting evidence, appellant's actual knowledge of the burglary information would also encompass the theft counts which were subsequently filed. In any event, should the date when appellant had knowledge of the charges be based upon the filing date rather than his surrender date, this time period, here approximately two months, is too short to explain any inaccuracies by defense witnesses in recalling times and dates. Appellant has failed to establish how his substantial rights were prejudiced by the trial court's failure to take judicial notice. *Rebstock v. State* (1983), Ind., 451 N.E.2d 1083. The trial court did not err.

### IV

Appellant claims that the trial court erred by denying his motion to strike the State's rebuttal testimony and evidence which had not been disclosed pursuant to a discovery order.

Neely testified that the crimes were committed by herself and Barnett. In addition, both appellant and his father testified that appellant was in Chicago from May 6, 1981, until June 10, 1981. To counteract appellant's alibi the State produced rebuttal evidence. Elbert Lockhart, an FBI fingerprint specialist, testified that the previously unidentified latent fingerprints which were found on Neely's car did not belong to Barnett. Dean Kesler, who owns and operates a service station near South Bend, Indiana, identified appellant in court as one of the persons who brought Neely's car in for repair work on May 15, 1981. Kesler also identified a repair bill which was found in the glove compartment of Neely's car. Brian Howard, an employee of Kesler's station, also identified appellant. Appel-

lant moved to strike the testimony of Kesler and Howard and to exclude the repair bill since they had not been disclosed pursuant to discovery.

■ On July 6, 1982, appellant filed his notice to interpose an alibi defense which stated in total: "Please take notice that the defendant intends to offer evidence of alibi in defense of the charge herein. That evidence will be that he was at 1711 West 65th street, Chicago, Illinois 60636, at the time of the alleged offense". The May 15th date only became important on rebuttal due to the testimony of appellant and his father that appellant was in Chicago from May 6th until June 10th. Defendant's alibi notice did not indicate that he was in Chicago for this time period. Rather, this information was only disclosed at trial.

■ Appellant's late filing of his alibi notice and the extension of the alibi time period beyond the date of the crime affected the State's ability to anticipate rebuttal witnesses. Moreover, appellant's motion for discovery did not specifically request the State to provide the names of rebuttal witnesses. Rather, appellant only requested that the "State produce the names and addresses of the persons the State intends to call as witnesses at trial". Rebuttal witnesses need not be disclosed by the State when it is not possible to anticipate that such witnesses will be called to testify at trial. *Smith v. State* (1982), Ind., 439 N.E.2d 634.

### V

Appellant argues that impermissibly tainted identification testimony was permitted to be introduced at his trial.

During the State's presentation of rebuttal evidence, Dean Kesler and Brian Howard identified appellant as one of the persons who brought Neely's car into the service station on May 15th for repairs. One week after the repairs had been made Officer Miskin showed Kesler one photograph of appellant and one photograph of Neely. At a police photographic array held one week prior to trial, Kesler was shown seven photographs of males and seven photo-

graphs of females and he positively identified appellant from this array.

The police first talked to Brian Howard about this case one week prior to trial. Neely's car was the only vehicle which was towed in by this station on May 15th. Appellant accompanied Howard in the tow truck and the two conversed. After towing the car, Howard also saw appellant inside the station office. Howard identified appellant from a photographic array which contained twelve photographs displayed by Officer Whippo.

 Due process requires suppression of in-court identifications of an accused when pretrial identification procedures were held under circumstances so suggestive as to give rise to a substantial likelihood of irreparable misidentification and there is no independent basis for the in-court identification. *Deamus v. State* (1985), Ind., 479 N.E.2d 1319. To determine whether there is a sufficient independent basis this Court examines the totality of the circumstances pertaining to the witness' opportunity to observe the perpetrator during the commission of the crime: the length of time the witness was in the presence of the perpetrator, the distance the witness was from him, the lighting conditions at the time, the witness' capacity for observation, and the opportunity to observe particular characteristics of the perpetrator. The lapse of time between the alleged act and the pretrial identification is also to be considered. *White v. State* (1982), Ind., 433 N.E.2d 761.

 Howard's identification of appellant was clearly not tainted by impermissibly suggestive pretrial procedures. However, the exhibition of a single photograph to a witness is impermissibly suggestive. *Parker v. State* (1976), 265 Ind. 595, 358 N.E.2d 110. Therefore, Kesler's in-court identification of appellant would have been inadmissible had there been no independent basis to support his testimony. Three days after the crime Kesler gave a brief description of appellant and Neely to Officer Miskin. Appellant talked with Kesler to explain the car problems and Kesler discussed the nature of the repairs with appellant for approximately twenty minutes. Kesler saw appellant on two separate occasions: first when the car was dropped off for repairs and then the following day when the car was picked up. Kesler's in-court identification of appellant was supported by evidence independent of the one picture display.

## VI

Appellant contends that the trial court's ruling on the following instructions was erroneous: witness credibility, accessory liability, included offenses, and sources of law.

Appellant claims that the witness credibility instruction charged the jury to accept every witness' testimony as the truth. He maintains that this provision in instruction number five expressly contradicted the preceding paragraph wherein the jury was declared to be the sole judge of credibility.

The challenged portion of this instruction recited that "you should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth." The instruction also charged the jury that they were the exclusive judges of the evidence and the credibility of witnesses. In addition, this instruction also stated that should a witness' testimony be unreasonable, unworthy of belief, or conflict with other testimony, then the jury must determine whom to believe.

 The language "should attempt" does not bind the jury as to what must or must not be credited. When considering the impact of the instruction as a whole, *Sypniewski v. State* (1977), 267 Ind. 224, 368 N.E.2d 1359, the jury was properly instructed.

 Appellant claims that there was insufficient evidence to support an instruction on accessory liability. When there is some evidence that a second party was involved in the crime an instruction on accessory liability is proper. *Burdine v.*

*State* (1985), Ind., 477 N.E.2d 544. Birkey testified that when he drove into his driveway he saw "two people come out of his house and get into a car." Birkey followed the car and saw it sitting in a ditch. He saw a man and a woman jump out of the car and run into the woods. Birkey went further down the road and turned around. When he came back he saw the man back at the car, motioning for Birkey to provide assistance. Evidence that two persons were seen exiting the victim's house and also seen in the getaway car supports the giving of this instruction.

Appellant argues that the trial court erroneously refused to instruct the jury that class C burglary was a lesser and included offense of class B burglary. He also maintains that the second step of the lesser included offense test violates Article I, Section 19 of the Indiana Constitution. Specifically, he contends that since the jury is the exclusive fact finder the judge is improperly authorized under step two to invade the province of the jury by determining the weight of a particular issue.

▬▬▬▬ Whether the trial court should instruct upon a lesser and included offense requires a two step analysis. If the lesser offense is either factually or statutorily included within the crime charged, then the trial court must determine whether there is evidence of probative value to support the instruction. *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208. However, The State has absolute discretion to determine the crimes which will be charged against a defendant. The State can foreclose any opportunity by the defendant to seek conviction for a lesser offense by carefully drafting the information. *Compton v. State* (1984), Ind., 465 N.E.2d 711. The burglary information recited that "Dorsey did break and enter the dwelling of Wayne R. Birkey with intent to commit a felony therein, to wit, theft." The State indicated that it was seeking a conviction only for class B burglary when it omitted language such as "building or structure, to wit, dwelling" from the information. Appel-

lant's requested instruction was properly refused.

While appellant also seeks to buttress this argument on the Indiana Constitution, this Court does not reach a constitutional claim when the case can properly be disposed of on nonconstitutional grounds. *Board of Commissioners v. Kokomo City Plan Commission* (1975), 263 Ind. 282, 330 N.E.2d 92.

Appellant argues that the trial court erred by deleting from his preliminary instruction reference to sources of law (e.g., State Constitution, common law, Supreme Court decisions, court instructions, and arguments of counsel) which the jury could consider when performing their constitutional duty to determine the law. He claims that the language deleted from this instruction would have provided the jury with appropriate guidance in determining the law.

▬▬▬▬ The modified instruction which omitted the aforementioned sources of law did not impinge upon the State constitutional rights of the jury to determine the law. The court has the duty to charge the jury in a criminal case as to "all matters of law which are necessary for their information in giving their verdict." Ind.Code § 35–37–2–2. The duty of the jury to determine the law does not arise until after the jury receives the law from the trial court.

### VII

Appellant argues that the identification evidence is not sufficient to sustain his convictions.

This Court will not weigh the evidence or judge the credibility of witnesses. Rather, we will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment will be affirmed. *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236.

■ On the day of the crime or the following day Officer Mishken talked with Birkey. At this time Birkey gave a detailed description of the black male whom he saw exit from his house: "black male in his thirties or forties, dark complexion, two hundred eighty pounds, heavy built, five-eleven to six feet, moustached, dark shirt and pants." Birkey identified appellant in court as "the man who looks like the man he saw exit his house" and was not "one hundred percent certain." However, any uncertainty exhibited in a witness' testimony regarding identification is a factor for the jury to weigh when evaluating witness testimony. *Williams v. State* (1982), Ind., 439 N.E.2d 1142.

### VIII

Appellant claims that the trial court erred by entering judgments on inconsistent jury verdicts. He maintains that the jury verdicts were inconsistent because he was originally charged with two counts of theft although convicted on the lesser included offense of conversion. Since an intent to deprive is not an element of conversion and the evidence to support both convictions was based upon the recovery of stolen property from Neely's car, appellant argues that the resolution of these two verdicts was inconsistent.

■ This Court will not attempt to interpret the thought processes which the jury used to arrive at their verdict. The jury is the trier of fact and may attach whatever weight and credibility to the evidence which they believe is warranted. This Court will not speculate on inconsistent jury verdicts. *Hicks v. State* (1981), Ind., 426 N.E.2d 411.

### IX

Appellant argues that the trial court's calculation of pretrial credit was erroneous. While the trial court credited Dorsey with 105 days for pretrial detention, appellant claims that he is entitled to either 209 days or more than one year of credit, citing *Nutt v. State* (1983), Ind.App., 451 N.E.2d 342.

From June 6, 1981, until January 20, 1982, appellant was awaiting trial for the escape charges while being detained in a Michigan county jail. On August 13, 1981, Indiana authorities sent a warrant as a detainer to the Michigan authorities. Appellant was sentenced for the Michigan escape offense on January 20, 1982. On March 15, 1982, appellant was presented with the detainer forms sent by Indiana. Appellant was returned to Indiana on May 3, 1982, and was brought before the court on the present charges on May 5, 1982.

The trial court apparently credited appellant from the date he arrived in South Bend to face these charges until the date of sentencing. He maintains that he should receive pretrial credit either from the date the Michigan sentence was imposed, January 20, 1982, or the date that the Indiana authorities sent a detainer to the Michigan authorities, August 13, 1980.

■ The determination of a defendant's pretrial credit is dependent upon two criteria: (1) pretrial confinement and (2) which was a result of the criminal charge for which sentence is now imposed. *Dolan v. State* (1981), Ind.App., 420 N.E.2d 1364. In the *Nutt* case the defendant received pretrial credit for time served in Texas while he was awaiting trial for both Indiana and Texas charges. However, Steven Nutt remained in Texas for a substantial period of time after the Texas charges were dropped and pursuant to an Indiana hold. In the case at bar appellant was being held by Michigan authorities. However, when multistate charges have been filed against an appellant, he has the burden on appellate review to establish that his out-of-state confinement was a direct result of the criminal charges which were also filed against him by another state. The record in this case is unclear as to when appellant was being held by Michigan authorities solely based upon the Indiana charges for which sentence was imposed. Appellant has not sustained his burden.

Judgment affirmed.

GIVAN, C.J., and PIVARNIK, SHEPARD and DICKSON, JJ. concur.