WILLIAM LEE PALLETT *v.* STATE OF INDIANA.

[No. 1177S786. Filed October 11, 1978. Rehearing denied December 1, 1978.]

Keith A. Kilworth, Public Defender, of Richmond, for appellant.

Theodore L. Sendak, Attorney General, Michael Gene Worden, Deputy Attorney General, for appellee.

HUNTER, J.—The defendant, William Lee Pallett, was convicted by a jury of Assault and Battery with Intent to Kill, Ind. Code § 35-13-2-1 (Burns 1975) and Inflicting Physical Injury During the Commission of a Felony: to wit: Robbery, Ind. Code § 35-13-4-6 (Burns 1975). He was sentenced to two to fourteen years and life imprisonment respectively. He now appeals raising the following issues:

1. Whether the trial court erred in denying defendant's motion for a change of venue from the county;

2. Whether the trial court erred in refusing to grant defendant's motion to dismiss based on the Interstate Detainer Act;

3. Whether defendant was denied a fair trial when his court-appointed attorneys were denied funds to investigate an alleged armed robbery and shooting in Hagerstown, Maryland;

4. Whether the trial court erred in refusing to allow the impeachment of a state's witness through use of juvenile adjudications;

5. Whether the trial court erred in denying a defense motion for a mistrial due to an improper question asked by the prosecution of a state's witness;

6. Whether the trial court erred in allowing a state's witness to testify to what the victim told him outside the presence of the defendant;

7. Whether it was error for the trial court to convict defendant on both counts; and

8. Whether the conviction of defendant is supported by sufficient evidence.

The facts from the record most favorable to the state reveal the following. Mikeal King was returning to his home in Ohio from a hunting trip in Pennsylvania. He stopped at a filling station near Washington, Pennsylvania, where he was accosted by two young men who forced their way into his GMC truck. Mr. King was tied up and gagged and forced to sit between the two men in the truck. His abductors took his billfold and proceeded to drive the truck westward along Interstate 70. Mr. King identified the defendant, in court, as the individual who was driving and who held the gun most of the time.

The defendant stopped several times for coffee and gas including a stop just inside Indiana. After this last stop, the defendant drove for a short time off the interstate on a side road. As he was driving across the Centerville Road overpass over Interstate 70, he turned and shot Mr. King in the chest. Mr. King fell over and pretended to be dead. The defendant drove about a half mile farther and then stopped. The two men dragged Mr. King out of the vehicle and then drove back onto Interstate 70 and continued west.

Mr. King was able to walk to the interstate where he was found by two truckers. He was taken to a hospital where he remained in intensive care for several days. The defendant and his companion were arrested near Greenfield, Indiana, in Mr. King's truck. The defendant's companion gave a voluntary statement implicating defendant and himself as the ones involved in the crime.

## I.

The defendant first contends that the trial court erred in denying his motion for change of venue from the county based upon the prejudicial pretrial publicity in local newspapers and radio news broadcasts. There was a hearing on this motion and defendant produced five newspaper articles and the testimony of two individals involved with local radio news broadcasts. The publicity did mention the kidnapping, the shooting, and the dumping of the victim beside the road. However, only two of the printed articles appeared near the time of the trial. The rest of the publicity appeared at the time of the incident, about five months prior to the trial. The publicity did not show any evidence of the sensationalism which appeared in the murder cases of *Baniszewski* v. *State,* (1970) 256 Ind. 1, 261 N.E.2d 359, and *Sheppard* v. *Maxwell,* (1966) 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600.

It is clearly established that a trial court's denial of a motion for change of venue in a case such as this is reviewed only for abuse of trial court discretion. Ind. R. Crim. P. 12; Ind. Code § 35-1-25-4 (Burns 1975) ; *Mendez* v. *State,* (1977) 267 Ind. 309, 370 N.E.2d 323; *McFarland* v. *State,* (1975) 263 Ind. 657, 336 N.E.2d 824. This Court has further held that the trial court has the duty to balance the rights of the news media, the defendant, and the citizens as it determines the right to change of venue. *Brown* v. *State,* (1969) 252 Ind. 161, 247 N.E.2d 76.

In the instant case, the two newspaper articles that appeared just prior to the trial stated only that the defendant was pleading innocent to assault and briefly reviewed the facts of the incident. These exhibits do not show such a clear and convincing buildup of prejudice against the defendant that this Court could hold there was abuse of discretion by the trial court.

## II.

Defendant argues that the trial court erred in denying his motion to dismiss and that the Interstate Detainer Act required that his case should have been fully disposed of in Indiana before he was released to any other authority. We do not agree. The record shows that defendant was in custody in Wayne County, Indiana, awaiting trial for the instant crimes when he was transferred to Washington, D.C., to stand trial for federal charges.

Under these circumstances our Uniform Criminal Extradition Act, Ind. Code § 35-2.1-2-3 (Burns 1975) must be read in conjunction with the Agreement on Detainers, Ind. Code § 35-2.1-2-4 (Burns 1975) and the Interstate Detainer Act, Ind. Code § 11-1-7-1—11-1-7-7 (Burns 1973). The extradition law clearly provides for the discretion of the state in surrendering a person to another jurisdiction when a criminal prosecution is pending against him in this state. The detainer agreement act, on the other hand, is designed to secure a speedy trial for prisoners who are already incarcerated in one state and have charges outstanding against them in other states. This detainer act applies to persons who are already convicted and serving time in prison and does not apply to persons in defendant's situation.[1] Since the defendant had not yet been convicted in Indiana when he was transferred to Washington, D.C., neither the letter nor the spirit of the law has been violated in his case.

---

1. Ind. Code § 35-2.1-2-3 (Burns 1975). *"Uniform criminal extradition act. * * * 20.* If a criminal prosecution has been instituted against such person under the laws of this state and is still pending, the governor at his discretion either may surrender him on the demand of the executive authority of another state, or may hold him until he has been tried and discharged, or convicted and punished in this state." Ind. Code § 35-2.1-2-4 (Burns 1975), Article III. "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty [180] days. . . ."

## III.

The defendant argues that he was denied a fair trial because the trial court did not allow his court-appointed attorney funds to investigate an alleged shooting by his accomplice in Hagerstown, Maryland. It is true that an indigent defendant in a criminal prosecution has the constitutional right to have counsel provided for him. *Gideon v. Wainwright*, (1963) 372 U.S. 355, 83 S.Ct. 792, 9 L.Ed.2d 799.

Defendant claims that the evidence obtained from the Maryland investigation would tend to show that his accomplice was the one who actually shot Mr. King since this accomplice has shot someone else in Maryland. However, the accomplice did testify in court and was subjected to cross-examination. Any information on the Maryland incident would have had only a very slight value which was outweighed by the cost and time involved. Furthermore, any evidence as to who actually pulled the trigger in this crime was immaterial since the defendant can be held responsible if he either perpetrated the crime or aided, abetted, or encouraged its commission. Ind. Code § 35-1-29-1 (Burns 1975); *Cline v. State*, (1969) 253 Ind. 264, 252 N.E.2d 793.

## IV.

Defendant contends that it was error for the trial court to prevent him from presenting evidence for impeachment purposes of prior juvenile adjudications of his accomplice who testified as a state's witness. He bases his argument upon *Ashton v. Anderson*, (1972) 258 Ind. 51, 279 N.E.2d 210, which lists certain crimes for which a prior conviction can be used for impeachment purposes. However, this Court has clearly held that the dispositon of a juvenile matter is not admissible as impeachment evidence since the disposition of a juvenile does not constitute a criminal conviction. *Lineback v. State*, (1973) 260 Ind. 503, 296

N.E.2d 788, *on rehearing,* (1973) 260 Ind. 511, 301 N.E.2d 636. The trend in juvenile law has long been to protect the juvenile. Defendant has presented no convincing argument for overruling our established precedent. There was no error in denying the admissibility of the witness's juvenile record.

## V.

Defendant contends that it was error for the trial court to refuse to grant his motion for mistrial made during the direct examination of his accomplice who testified as a state's witness. Defendant argues that one statement by the witness is an "evidentiary harpoon" because it implies that the witness is unwillingly testifying instead of fully cooperating. The record shows the following:

[Questions by prosecutor. Answer by state's witness, Mr. Toney.]

Q. "Have I promised you anything to get you to testify here today?"
A. "No."
Q. "Has anybody from the Prosecutor's Office?"
A. "No."
Q. "Why are you testifying?"
A. "The Court compelled me to."
Q. "Beg your pardon?"

Because this last answer was not deliberately sought, talk of an "evidentiary harpoon" is misplaced.

An evidentiary harpoon involves improper evidence deliberately introduced by counsel to prejudice the jury, the effect of which cannot be corrected by an admonition by the trial court. *Block* v. *State,* (1976) 265 Ind. 569, 356 N.E.2d 683. Obviously, the answer complained of here was not deliberately sought by the prosecutor. Indeed, the witness's volunteered statement was a complete surprise to the prosecutor, as may readily be discerned from his response.

In this case the trial judge took the correct action to dispel

any possible prejudice created by the statement by promptly admonishing the jury to disregard both the question and answer. The trial judge, with defendant's permission, further explained to the jury that the only order of the court regarding this witness had been an order of immunity for the testimony given at this trial. This was sufficient to avoid any prejudice which might have been unintentionally introduced into the case. *Duke* v. *State,* (1968) 249 Ind. 466, 233 N.E.2d 159.

## VI.

Jack Hale was the first truck driver to reach Mr. King after the crime. He testified in court as to what Mr. King said to him when he first reached him and they were waiting for help to come. Defendant contends that his testimony was inadmissible hearsay. However, it is clear that this testimony falls within the spontaneous declaration or "res gestae" exception to the hearsay rule. Statements which are made under circumstances of time, physical shock, and mental condition which exclude the idea of deliberation and fabrication may be taken as trustworthy and admitted as evidence. *Block, supra; Ketcham* v. *State,* (1959) 240 Ind. 107, 162 N.E.2d 247; VI WIGMORE, EVIDENCE § 1747 (Chadbourn rev. 1976).

In this case the victim was found only a few minutes after he had escaped from his abductors; he was seriously wounded, and he had just been through a harrowing kidnapping that had lasted several hours. There was no error in overruling the hearsay objection under these circumstances.

## VII.

Defendant argues that he should not have been sentenced on both counts since both arose out of the same facts and circumstances. We do not agree. The two charges of assault and battery with intent to kill and inflicting injury during the commission of a robbery

were for offenses with separate essential elements. The two offenses require proof of different facts. We have held that:

"[W]hen the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second, although the offenses were both committed at the same time and by the same act." *Coleman* v. *State,* (1975) 264 Ind. 64, 71, 339 N.E.2d 51, 56.

There was no error in the sentencing.

### VIII.

Defendant finally contends that because of all the above alleged errors, the evidence presented at trial is insufficient to support his conviction. This argument is not persuasive. The testimony of the victim, Mr. King, alone was sufficient to support the conviction, and no errors concerning his testimony were shown. Furthermore, Mr. King's testimony was corroborated by the testimony of doctors who treated him, truck drivers who found him, and even by defendant's accomplice in the crime. Since there was sufficient evidence to support the verdict of the jury, the verdict will not be overturned. *Henderson* v. *State,* (1976) 264 Ind. 334, 343 N.E.2d 776.

For all the foregoing reasons there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

Givan, C.J., DeBruler and Pivarnik, JJ., concur; Prentice, J., concurs in result.

NOTE.—Reported at 381 N.E.2d 452.