James A. YEAGLEY, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 683S196.

Supreme Court of Indiana.

Sept. 6, 1984.

⚷—1203.20

Eric T. Dean, Jr., Crawfordsville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, James A. Yeagley, was convicted by a jury of two counts of attempted voluntary manslaughter, a Class B felony, Ind.Code § 35–41–5–1 (Burns 1979 Repl.); Ind.Code § 35–42–1–3 (Burns 1979 Repl.) and of one count of burglary, Ind.Code § 35–43–2–1 (Burns 1984 Supp.). Defendant was also found to be a habitual offender, Ind.Code § 35–50–2–8 (Burns 1984 Supp.), and he received a total sentence of eighty years. Defendant raises the following ten issues in this direct appeal:

1. Whether the trial court erred in denying defendant's motion for a change of venue;

2. Whether the trial court erred in denying defendant's motion for a continuance;

3. Whether the trial court erred in admitting various diagrams and photographs into evidence;

4. Whether the trial court erred in admitting a cardboard shooting test background into evidence;

5. Whether the trial court erred in giving a state's instruction dealing with burglary;

6. Whether the trial court erred by giving instructions that included the class of felony involved;

7. Whether the trial court erred in refusing defendant's tendered instruction on attempted reckless homicide;

8. Whether there was sufficient evidence to support the burglary conviction;

9. Whether the trial court erred in not merging the sentences for attempted voluntary manslaughter and burglary; and

10. Whether the trial court erred in refusing two of defendant's tendered instructions on the habitual offender charge.

A review of the facts most favorable to the state shows that on June 26, 1982, Charles May visited the home of his fiance, Becky Yeagley, in Ladoga. Becky Yeagley was defendant's ex-wife. Charles May was standing on the front porch when he noticed defendant approaching the house with a shotgun. May ran into the house to warn Becky. Defendant then fired the shotgun through the front door, striking Becky in the shoulder. Becky ran from the house. Defendant entered the house and fired again, this time wounding May in the hip. Defendant fled but surrendered to the police the next day.

### I.

Defendant first argues that the trial court erred when it denied defendant's motion for a change of venue. Defendant asserts that this case generated a great deal of attention in Montgomery County and that he did not receive a fair trial because of community prejudice.

■ A decision on a motion for change of venue is a matter within the trial court's discretion. Ind.R.Crim.P. 12. The burden rests with the moving party to establish adverse publicity and that the jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon evidence introduced at trial. *McReynolds v. State,* (1984) Ind., 460 N.E.2d 960; *Sage v. State,* (1981) Ind., 419 N.E.2d 1286.

■ Defendant here has not shown that the trial judge exceeded his discretion. A review of the newspaper articles on this case shows little more than a reporting of the facts of the incident. The voir dire transcript shows that the jurors indicated they could put aside what they already knew about the case and render a decision based on the facts introduced at trial. We also note that defendant failed to exhaust his peremptory challenges in an attempt to secure juror impartiality. *Pine v. State,* (1980) Ind., 408 N.E.2d 1271; *Grooms v. State,* (1978) 269 Ind. 212, 379 N.E.2d 458. The trial court did not err in denying defendant's motion for a change of venue.

### II.

Defendant's second argument is that the trial court erred in denying defendant's motions for a continuance. Defendant twice requested a continuance on the grounds that records he needed from the Army had not been produced, that there had been inadequate time to test for glandular problems, and that he needed to develop ballistics evidence to rebut the testimony of a state's witness. Defendant also orally requested a continuance during trial.

■ A motion for a continuance based on non-statutory grounds is addressed to the discretion of the trial court. To demonstrate an abuse of discretion, the record must reveal that defendant was prejudiced by the failure to grant the continuance. *Fielden v. State,* (1982) Ind., 437 N.E.2d 986; *Caccavallo v. State,* (1982) Ind., 436 N.E.2d 775. There has been no showing of abuse of discretion here. Neither in his brief nor at trial has defendant shown how the Army records or the glandular tests would have benefited his case; defendant simply stated that they were "central to the presentation of an insanity defense." The denial of a motion based upon sheer

speculation that some benefit might flow from it cannot be considered arbitrary or abusive. *Brewer v. State,* (1983) Ind., 449 N.E.2d 1091. The trial judge was also not required to continue the case in order to allow defendant to develop evidence to rebut some facet of the state's case. The continuances here were not requested until less than a week before trial. Defendant had ample time and opportunity to prepare prior to this time. There was no error in denying the requests for continuances.

### III.

Defendant next contends that the trial court erred in admitting certain diagrams and photographs. The first of these, state's exhibits 2, 3, and 4, were diagrams of the house where the shooting occurred. Defendant objected to their admission on the ground that they were not drawn to scale and were therefore confusing to the jury.

Diagrams are admissible to represent objects and places that cannot otherwise be clearly shown or described. When offered in connection with the testimony of a witness, such documents are admissible as legitimate aids to the court or jury. *Brown v. State,* (1981) Ind., 417 N.E.2d 333; *Sexton v. State,* (1974) 262 Ind. 554, 319 N.E.2d 829. The diagrams that comprised state's exhibits 2, 3, and 4 showed the interior layout of the victim's house. Since the house itself obviously could not be brought before the jury, these diagrams were a legitimate aid for the jury. The diagrams were introduced during the testimony of Deputy Larry Lough, who investigated the incident. Lough testified that the diagrams were *not* drawn to scale but that they accurately depicted the layout of the house and the position of the furniture at the time of the investigation. We see no error in the introduction of these exhibits.

Defendant also contends the trial court erred when it admitted state's exhibits 12, 13, and 14, which were photographs of the scene of the shooting. Defendant's objection apparently relates to strings shown in the picture; these strings represented the line of fire. Defendant asserts that there was no foundation laid to establish that the strings did represent the line of fire.

The admission of photographic evidence is within the sound discretion of the trial court, reviewable only if the trial judge exceeds his discretion. *Paige v. State,* (1982) Ind., 441 N.E.2d 438; *Wilson v. State,* (1978) 268 Ind. 112, 374 N.E.2d 45. To be properly admitted the witness must establish that the photographs are true and accurate representations of the things they portray. *Bray v. State,* (1982) Ind., 430 N.E.2d 1162. The witness in this case, Deputy Lough, testified that the pictures accurately depicted the interior of the house. Lough explained the presence of the strings but made no attempt to establish that the strings did, in fact, show the trajectory of the shotgun pellets. Lough merely stated that the strings were present when he took the pictures. The trial judge did not abuse his discretion.

Defendant lastly objects to the admission of state's exhibits 7, 8, 16, 17, 18, 19, 20, 21, 22, and 23. These exhibits are photographs of the interior of the house and they depict the crime scene and various evidentiary items found in the house. Defendant claims the photographs were improperly admitted because they were taken nearly two hours after the shooting. Therefore, defendant asserts, they could not have accurately depicted the crime scene.

We believe the photographic exhibits were properly admitted. Deputy Lough testified that all of the photographs accurately depicted the crime scene at the time of his investigation. The photographs were thus being introduced to show what Deputy Lough was testifying about, which was his investigation. The fact that Lough could not state that nothing had been moved in the two-hour interval between the shooting and the taking of the pictures is not ground for reversal. The photographs were not introduced to show the crime

scene as it existed at the time of the shooting. We find no error.

## IV.

■ Defendant next contends that the trial court erred in admitting a cardboard background from a shooting test. The background was admitted during the testimony of Jerry Wilder, a firearms examiner for the Indiana State Police. Wilder testified that he fired defendant's shotgun at the cardboard background to produce shot patterns. The shot patterns in the cardboard were then compared with shot patterns in the victims' screen door, clothes, and flesh to determine how far away defendant stood when he fired. Defendant contends the use of the cardboard made the test "inherently unreliable" because of the dissimilarity of materials used in the comparison. However, Wilder specifically testified that in making a determination of the distance of a shot the resistance of the material was unimportant; what mattered was the pattern. Wilder testified in detail as to how he conducted his tests and was shown to be an expert in firearms. We find no error, and as such the trial judge did not abuse his discretion in allowing this evidence. *See Napier v. State*, (1983) Ind., 445 N.E.2d 1361.

## V.

■ Defendant contends the trial court erred in accepting state's instruction number 4 on burglary. This instruction stated:

"One of the essential elements in the offense of burglary is the element of 'breaking.' This term does not imply the actual fracturing or shattering of a material part of a building, such as a door or window. 'Breaking,' as used in reference to the offense of burglary, includes the putting aside of any material part of the building intended as a security against invasion, such as removing a window screen or opening a closed door. "Walking through an open door does not constitute a 'breaking' in this sense. However, the use of the slightest force in pushing aside a door in order to enter does constitute a breaking through the doorway."

Defendant asserts that the instruction confused the jury since they could have inferred that shooting a hole in the screen door was sufficient to constitute a breaking.

Instructions that mislead or confuse the jury may be properly refused by the trial court. *Askew v. State*, (1982) Ind., 439 N.E.2d 1350. The instruction in question was taken verbatim from *Powell v. State*, (1974) 160 Ind.App. 557, 312 N.E.2d 521, where it was challenged on the ground that it contained mandatory language, thus invading the province of the jury to determine the law. The Court of Appeals, while noting that the instruction *should not serve as a model for future instructions*, found no error. We also find that the giving of the instruction was not error. The instruction specifically stated that an offender had to remove a window screen. We do not believe this led the jury to conclude that shooting a hole in the screen was enough to constitute a breaking. We find no error.

## VI.

■ Next, defendant contends that the trial court erred in reading instructions to the jury that contained the class of the offense. For example, an instruction on lesser included offenses stated that voluntary manslaughter was a Class B felony and that battery was a Class C felony. Defendant argues that informing the jury on the class of the offense is tantamount to informing it of the legislature's punishment scheme. *Cf. Debose v. State*, (1979) 270 Ind. 675, 389 N.E.2d 272 (jury should not be informed of possible sentence involved).

We first note that the issue here deals with instructions given to the jury. Defendant, however, did not tender his own instructions. Any alleged error predicated on trial court's final instructions is waived by the failure of defendant to tender his own correct instructions. *Clemons v. State*, (1981) Ind., 424 N.E.2d 113; *Miller v. State*, (1978) 267 Ind. 635, 372 N.E.2d

1168. Even so, we find no error in this case. Nowhere does the record show that the jury was informed what sentence defendant would receive if a particular verdict were returned. The jury was only informed that a certain crime, e.g. voluntary manslaughter, was labeled a certain class, e.g. Class B. The jury was not informed that one class carried a more severe sentence than another. The instructions contained correct statements of the law, and we find no error.

## VII.

Defendant argues that we should recognize the offense of attempted reckless homicide. The courts of this state, however, have previously found that no such offense can exist since the attempt statute applies only to specific intent crimes. *Conley v. State*, (1983) Ind., 445 N.E.2d 103; *Rhode v. State*, (1979) 181 Ind.App. 265, 391 N.E.2d 666. Since there is no offense of attempted reckless homicide, the trial court did not err in refusing defendant's tendered instruction on the crime.

## VIII.

Defendant next contends that the evidence was insufficient to support his conviction for burglary. Although it is not entirely clear from defendant's brief as to what was lacking, defendant apparently believes there was no evidence that he actually "broke" and entered the victim's house.

Our standard of review in sufficiency questions is well established. We may neither weigh the evidence nor judge the credibility of witnesses. We must look at the evidence most favorable to the state along with all reasonable inferences drawn therefrom to determine whether there is substantial evidence of probative value to support the conclusion of the trier of fact. *Walker v. State*, (1982) Ind., 442 N.E.2d 696; *Fielden v. State*, (1982) Ind., 437 N.E.2d 986. A guilty verdict may be based solely on circumstantial evidence. *McAfee v. State*, (1984) Ind., 459 N.E.2d 1186; *Thompson v. State*, (1982) Ind., 441 N.E.2d 192.

In order for defendant to be convicted of burglary the state needed to prove that he (1) broke, (2) entered, (3) the building or structure of another, (4) with intent to commit a felony. Ind.Code § 35–43–2–1 (Burns 1984 Supp.). In order to establish a breaking the state must show that the defendant used some physical act to gain entry. *McCormick v. State*, (1978) 178 Ind.App. 206, 382 N.E.2d 172. The use of even slight force to gain unauthorized entry is sufficient to prove a breaking. *Howard v. State*, (1982) Ind., 433 N.E.2d 753. Here there was sufficient evidence presented to the jury for it to find defendant guilty of burglary. The evidence showed that defendant first shot through the screen door on Becky Yeagley's house. Prior to this, Charles May had run from the porch into the house when he saw defendant approaching. The screen door between the porch and the house was the type that automatically closed. May testified that, at the time he was shot, he was inside the house running away from the front door. May further testified that there was no way defendant could have fired the shot from outside, since defendant would have had to "shoot around the corner" in order to have hit May from outside. There was sufficient evidence to establish a breaking and entering.

## IX.

Defendant argues that his sentences for the attempted voluntary manslaughter of Rebecca Yeagley and for burglary should have been merged. Thus, defendant believes, he should have received a thirty-year rather than a fifty-year sentence on the underlying charge.

The merger doctrine does not apply to this case. In *Elmore v. State*, (1978) 269 Ind. 532, 382 N.E.2d 893, we held that the proper test for determining when a defendant can be sentenced for multiple offenses in the same trial is the identity of the offense test. Here, the crimes of burglary and attempted voluntary manslaughter are clearly not identical, and the fact that the same evidence may be used to establish

elements in each crime does not make the merger doctrine applicable. The crime of burglary was a distinct offense for which defendant could be sentenced, despite his conviction for attempted voluntary manslaughter. There was no error.

## X.

After the habitual offender phase of the trial defendant tendered the following instruction:

"If either of Defendant's two felony convictions is related to the present felony conviction, then you should find the Defendant Not Guilty of being an Habitual Offender.

"A prior felony conviction is 'related' to the present felony conviction if it involves the same parties or if it is substantially and materially related to the present conviction."

Defendant contends the trial court erred in refusing this instruction. We disagree. Under defendant's rather strained interpretation of "related felonies," a defendant could never be found to be a habitual offender if the victim from the present crime was the same victim of a prior crime committed by defendant. Using defendant's definition of "related" the prior conviction would be related to the present since it involved the same parties. This clearly is not what is meant by "related." Since the instruction was therefore incorrect, there can be no error in refusing it. *Richey v. State,* (1981) Ind., 426 N.E.2d 389; *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836.

Defendant also asserts that the trial court erred in refusing defendant's tendered habitual offender instruction number 5:

"It is the intent of the Habitual Offender law to punish those who have been convicted of two prior felonies and show no hope of rehabilitation.

"If you find that the Defendant is still subject to punishment for either of his two prior felonies, then you must find that he is not an Habitual Offender within the meaning of the law.

"You may find that the Defendant is an Habitual Offender if you find that he has completed the sentence for both prior felonies."

Defendant argues that the instruction would prevent vindictive sentences. Once again, however, we find that the tendered instruction was incorrect. Our habitual offender statute requires that a person be twice convicted and sentenced before he can be found to be a habitual offender. Ind.Code § 35-50-2-8 (Burns 1984 Supp.). The statute does not require that the sentences be completed. To hold otherwise would lead to ludicrous results, e.g., an escaped prisoner could commit any number of felonies while free, but he could not be found to be a habitual offender since he had not completed his sentence. We find no error on the part of the trial court.

For all of the foregoing reasons, there was no trial court error, and the judgment of the trial court should be affirmed.

Affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.