**Tyrone HENDERSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 71S00-8604-CR-392.

Supreme Court of Indiana.

March 9, 1989.

Joseph F. Rubin, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant, Tyrone Henderson, was found guilty by a jury of two counts of attempted battery with a deadly weapon and found to be a habitual offender. The following related issues are raised in this direct appeal:

1. Whether this single occurrence could result in two separate offenses,

2. Whether attempted battery is a cognizable offense,

3. Sufficiency of evidence.

## 1. Separate Offenses

■ The defendant was convicted of shooting at two police officers. He argues that only one offense was committed because "[t]he close proximity of the officers to each other leads to the inference that the shots were fired by the subject in the general direction of both officers." He urges that this should be treated as logically analogous to multiple blows upon a single victim, which constitutes but one offense. *Hanic v. State* (1980), Ind.App., 406 N.E.2d 335. We disagree.

In *Johnson v. State* (1983), Ind., 455 N.E.2d 932, the defendant was convicted of two counts of attempted murder after she struck one victim with her car, then pursued and struck another victim. We noted that the test for determining whether separate sentences may be imposed upon multiple counts is whether the charged offenses are themselves the same and not whether they arose from the same criminal act or course of conduct. We then held:

> Obviously the crime against one victim is separate and distinct from the crime against the other victim. This case involves two separate crimes committed against two separate victims and separate sentences were properly imposed for each crime.

*Id.* at 937. *See also Randall v. State* (1983), Ind., 455 N.E.2d 916 (sentencing on five counts of confinement as to five victims was proper; defendant committed a personal crime as to each); *Riley v. State* (1982), Ind., 432 N.E.2d 15 (sentencing on two counts of rape, three counts of criminal deviate conduct and two counts of robbery as to two victims was proper; the crimes against each victim were separate and distinct from the crimes against the other).

Here, although both officers were chasing the defendant, each testified that the defendant shot separately at each officer. As in *Johnson*, two separate crimes were committed against two separate victims. It was not error to treat this as two separate offenses.

## 2. Attempted Battery as a Cognizable Offense

■ The defendant next contends that the offense of which he was found guilty, attempted battery, does not properly exist under Indiana law. Citing *Humes v. State* (1981), Ind., 426 N.E.2d 379, he argues that the attempt statute, Ind.Code § 35–41–5–1, applies only to specific intent crimes and that language used in *Johnson v. State* (1982), Ind., 435 N.E.2d 242, 247, states that the offense of battery is not a specific intent crime. The defendant claims that he was therefore convicted of two counts of a non-existent offense.

The State acknowledges that prevailing Indiana law applies the attempt statute only to specific intent crimes; that two cases contain language describing battery as not a specific intent crime, *Johnson*, 435 N.E.2d 242; *Norris v. State* (1981), 275 Ind. 608, 419 N.E.2d 129, 132; and that a theoretical conflict is thereby presented. Noting the comments of the Criminal Law Study Commission to both the attempt statute and the battery statute, the State urges that we reject the *Johnson* and *Norris* references to battery as a general intent crime. Resolution of this problem requires

inquiry into the intended meaning and use of the term "specific intent."

In the analysis and discussion of intent as an element of criminal responsibility, noted authorities have recognized that some crimes require a specified intention in addition to the intentional doing of the conduct constituting the "deed of crime," or *actus reus*, and have used the term "specific intent" to designate such special additional mental element. R. Perkins, *Criminal Law* 762 (2d ed. 1969); W. LaFave & A. Scott, *Handbook on Criminal Law* § 28, at 202 (1972). Professor Perkins provides the following specialized definition:

> A specific intent, when an element of the mens rea of a particular offense, is some intent other than to do the actus reus thereof which is specifically required for guilt.

Perkins, *supra*, at 762. Common law larceny and common law burglary are cited to illustrate this definition. In addition to the intent to take and carry away the property of another, conviction for larceny required proof of an additional specific intent to steal. Similarly, conviction of common law burglary required not only an intentional breaking and entry, but in addition a specific intent to commit a felony therein.

Use of the term, however, has not been universal and consistent.

> "General intent" is often distinguished from "specific intent," although the distinction being drawn by the use of these two terms often varies. Sometimes "general intent" is used in the same way as "criminal intent" to mean the general notion of *mens rea*, while "specific intent" is taken to mean the mental state required for a particular crime. Or, "general intent" may be used to encompass all forms of the mental state requirement, while "specific intent" is limited to the one mental state of intent. Another possibility is that "general intent" will be used to characterize an intent to do something on an undetermined occasion, and "specific intent" to denote an intent to do that thing at a particular time and place.

LaFave & Scott, *supra*, at 201–202. Others have similarly expressed dissatisfaction with the variety of terms, including "specific intent," to describe culpable mental states.

> Many of such terms are used indiscriminately and, to a large extent, are not defined; whatever light is shed on the meaning of defined terms becomes obscured by the failure to define seemingly synonymous terms; some terms are used interchangeably but not always consistently; the meanings of some terms overlap or shade into one another; and terms are not sharply distinguished one from another to show that some differ in kind while others differ only in degree.

1 *Wharton's Criminal Law* § 27, at 136 (C.Torcia ed. 1978). In order to promote greater clarity and precision, the "specific intent"—"general intent" terminology was abandoned in the Model Penal Code. *Id.*; LaFave & Scott, *supra*, at 202; Model Penal Code § 2.02 comment (Tent.Draft No. 4, 1955). Indiana substantially implemented this approach with revision of its criminal code in 1976 and the statutory designation of "intentionally," "knowingly," and "recklessly" as specific terms denoting degrees of criminal culpability. Ind.Code § 35–41–2–2.

Subsequent cases holding that the Indiana attempt statute can have application only to specific intent crimes resulted from discussions reviewing whether the Indiana attempt statute applies to crimes requiring a culpability of mere "recklessly," rather than "intentionally" or "knowingly." *See Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507 (attempted murder); *Smith v. State* (1981), Ind., 422 N.E. 2d 1179 (attempted involuntary manslaughter); *Clemons v. State* (1981), Ind., 424 N.E.2d 113 (attempted involuntary manslaughter and attempted reckless homicide); *Humes v. State* (1981), Ind., 426 N.E. 2d 379 (criminal recklessness); *Rhode v. State* (1979), 181 Ind.App. 265, 391 N.E.2d 666 (attempted reckless homicide); *Tunstall v. State* (1983), Ind., 451 N.E.2d 1077 (criminal recklessness). As used in this line of cases, the term "specific intent" was utilized to exclude application of the at-

tempt statute to crimes requiring "recklessly" as the prerequisite culpability. The term was not used in its specific sense found in criminal law jurisprudence.

The meaning of "specific intent," as used in the above attempt statute cases, is also distinguishable from the intended meaning in those cases which have commented that battery is not a specific intent crime. In *Norris*, the defendant contended that he was so intoxicated that he could not form any specific intent to commit the offenses of murder, battery, resisting arrest, and possession of controlled substances. Perfunctorily noting that of all the offenses charged, only the attempted murder is a specific intent crime, the *Norris* court proceeded to find the evidence sufficient to find the defendant capable of forming the specific intent to kill. 419 N.E.2d at 132–133. Similarly discussing a claim of insufficient evidence, *Matthews v. State* (1985), Ind., 476 N.E.2d 847, involved a defendant's claim that his "specific intent" at the time he fired three shots "was simply to escape the danger which had confronted him, rather than to specifically batter Officer Dieter." Citing *Norris*, the court recited that battery is not a specific intent crime, and then proceeded to find the evidence sufficient to prove that the defendant intended an unlawful touching. In both of these cases, the description of battery as not a specific intent crime was an unnecessary and inadvertent reference.

In *Johnson*, this Court affirmed the trial court's refusal to give tendered instructions regarding criminal recklessness as a lesser-included offense of battery, noting that evidence of defendant's drug use could not convert otherwise intentional acts into reckless conduct because "neither battery nor criminal recklessness are specific intent crimes," and therefore the defense of voluntary intoxication is prohibited by statute.[1] We decline to view *Johnson* as instructive upon the issue of whether battery is a specific intent crime. There were two reasons given priority in the Court's rationale for affirming the trial court's refusal

to give the tendered instructions. First, defendant's arguments supporting tendered instructions on criminal recklessness were rejected because "it is apparent that the battery was accomplished by the direct act of pulling a pistol and firing into the body of the victim," thus emphasizing the absence of evidence of mere recklessness. Second, the opinion emphasized that defendant's tendered instructions were confusing, incomplete, and inadequate because of their failure to explain the role of an uncharged lesser-included offense, and to define the words recklessly, knowingly, and intentionally. The discussion of "specific intent" and battery in *Johnson* therefore does not compel us to conclude that the culpability required for battery precludes application of the Indiana attempt statute.

The offense of battery, Ind. Code § 35–42–2–1, requires proof that the accused "knowingly or intentionally" touched another person in a rude, insolent, or angry manner. In its comments to the battery statute, the Criminal Law Study Commission included the following:

It should be noted there is no crime of assault in the proposed Code. Because the Code has a general attempt crime, I.C. 35–11.1–8–1, the Commission believed it redundant to include the specific crime of assault which is nothing more than an attempted battery. Therefore, all assaults should be prosecuted as attempted batteries.

Ind.Code Ann. § 35–42–2–1 (West 1978, p. 302.)

We conclude that battery is not among the class of offenses whose prerequisite culpability precludes application of the Indiana attempt statute. The offense of attempted battery is a valid and cognizable offense under Indiana law. There is no error on this issue.

### 3. Sufficiency of Evidence

 The defendant challenges the sufficiency of the evidence to support the con-

---

1. Ind.Code § 35–41–3–5(b). The particular subsection of this statute has been since held void.

*Terry v. State* (1984), Ind., 465 N.E.2d 1085.

victions and the habitual offender determination.

In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The evidence reveals that Officer Nybo and Officer Niezgodski responded to a dispatch that a burglary was in progress and saw a black male leave the scene of the alleged burglary. They pursued him on foot. Nybo observed the defendant from close range as he ran past him and believed he recognized defendant. During the chase, the defendant approached an alley, and before he entered, he turned and fired a shot at Nybo, who returned fire. As Niezgodski entered the alley, the defendant fired at him, and Niezgodski returned fire. Nybo testified that he saw a blue steel .25 caliber semi-automatic weapon in defendant's hand. Officer Scott saw the defendant in the alley, chased him and saw him enter a house through the window. When police surrounded and entered the house, the defendant came down the stairs clad only in a blanket. He told police that another man with a gun had just entered the house and was still there. Clothing matching the description of the clothes worn by the man the police had chased were found inside the house. Inside the pants pockets several bullets were found. No other man was found.

While mere presence at the scene of a crime is not sufficient in and of itself to establish guilt, *Harrison v. State* (1986), Ind., 496 N.E.2d 49, we find the evidence here sufficient to support a reasonable inference that the gun existed and that defendant was the perpetrator.

The defendant also asserts that testimony regarding the suspect's height and clothing contained inconsistencies. Inconsistency in the testimony of witnesses goes to the weight of the evidence, however, and resolution of inconsistencies is made by the trier-of-fact. *Ingram v. State* (1981), Ind., 421 N.E.2d 1103. We will not reweigh the evidence regarding any alleged inconsistencies.

The defendant next alleges that the evidence was insufficient to show that the two prior felony convictions qualified to support the habitual offender determination. We agree. One of the essential elements of a habitual offender finding is proof that the second predicate offense was committed subsequent to the date of sentencing for the first predicate offense. Ind. Code § 35–50–2–8. Failure to prove this element requires that the habitual offender determinations be vacated. *Smith v. State* (1987), Ind., 514 N.E.2d 1254; *Steelman v. State* (1985), Ind., 486 N.E.2d 523; *Clark v. State* (1985), Ind., 480 N.E.2d 555; *Graham v. State* (1982), Ind., 435 N.E.2d 560.

The State's evidence of two prior felony convictions established only that the defendant was sentenced with the first on August 25, 1975, and that the second offense was committed sometime in 1981 or before, for which the defendant was sentenced on June 10, 1981. The evidence fails to establish that the 1981 conviction was for an unrelated offense committed after August 25, 1975.

We affirm the defendant's convictions on two counts of attempted battery. This cause is remanded to vacate the habitual offender determination and for resentencing.

Upon resentencing the trial court may impose any sentence permissible under statute. *Coble v. State* (1988), Ind., 523 N.E.2d 228; *Williams v. State* (1986), Ind. App., 494 N.E.2d 1001, *cert. denied* (1987), 481 U.S. 1054, 107 S.Ct. 2191, 95 L.Ed.2d 846.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK. JJ., concur.