**Quanardel Latez WELLS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee.**

No. 49A02–8807–CR–288.

Court of Appeals of Indiana, Second District.

July 9, 1990.

Rehearing Denied Aug. 21, 1990.

Howard Howe, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Quanardel Latez Wells (Wells) appeals his conviction for battery, a class C felony. We affirm.

The facts disclose that in the early morning hours of April 19, 1987, Corey Thomas and several other friends were walking home from a skating rink in Indianapolis. While they were walking, a black Monte Carlo pulled up beside them and stopped. After the car stopped, the driver got out and asked the boys why their hats were turned to the right. When the boys did not respond, the driver of the car reached into the car and said "give me that thing." Record at 270. The boys started to run because they thought the driver was talking about a gun. Corey Thomas testified that when he turned around he saw the driver holding a little black gun. Several shots were fired, and one bullet struck Corey Thomas' brother in the back. Later in the evening, the police stopped a black car matching the description of the black Monte Carlo. The police found a hand gun in the car. Corey Thomas and another boy identified Wells as the driver of the car.

Juvenile jurisdiction was waived, and Wells, age 17, was charged with attempted murder, a class A felony. The court permitted Wells to waive his right to a jury trial. During trial on February 10, the court determined that Wells had fired the gun. However, the court was concerned that proof of intent was insufficient to convict Wells of attempted murder. The court therefore requested counsel to prepare arguments concerning lesser included offenses. On March 9, the court heard additional argument from counsel and found Wells guilty of "aggravated" battery, a class C felony, and sentenced him to eight years.

Wells presents the following issues, which we restate:

(1) Whether the trial court erred in failing to consider criminal recklessness as a lesser included offense of attempted murder;

(2) Whether the trial court erred in prohibiting Wells from impeaching a State's witness with evidence of a prior juvenile adjudication;

(3) Whether the trial court erred in allowing James Hamby to testify as an expert with reference to gunshot residue;

(4) Whether Wells' conviction for aggravated battery was not supported by sufficient evidence; and

(5) Whether the court improperly enhanced Wells' sentence on the basis of incorrect facts.

### I

██ Wells argues that the court erred in failing to consider criminal recklessness as a lesser included offense of attempted murder.[1] In *Humes v. State* (1981) Ind., 426

---

1. Although this case involved a bench trial rather than a jury trial, it is clear from the record that the trial judge did not believe he was entitled to consider criminal recklessness as a lesser included offense of attempted murder. At the hearing held March 9, 1988, Wells requested the court to consider criminal recklessness as a lesser included offense of attempted murder. In response the court stated:
 "I think I'm in agreement with the defendant that the caselaw is pretty much that they

didn't, for some reason, some Supreme Court, in their wisdom, does not want us to have uh, criminal recklessness be an included offense on attempt murder. Although, to me, it seems like there's many fact situations where it is there. Uh, other than that we do have the uh, the battery that is an included offense under the attempt murder." Record at 513–514.

N.E.2d 379, our Supreme Court held that criminal recklessness is not a lesser included offense of the crime of attempted murder. The court there stated:

"It is well settled that the test for determining whether it was error to refuse instructions on lesser included offenses is embodied in a two-step analysis. It must be determined by looking at the language of the statute and the indictment or information whether the lesser offense is necessarily included within the greater and also whether there has been evidence introduced at trial to which the included offense instruction was applicable." *Id.* at 382.

Applying that test, the court compared the statutes governing attempted murder and criminal recklessness and considered the charging instrument involved in that case. The court then found that there was no element of recklessness in either the charging information or our general attempt statute, I.C. 35–41–5–1 (Burns Code Ed. Repl.1985). The conclusion that our general attempt statute has no element of recklessness was based upon earlier holdings that our general attempt statute can have application only to specific intent crimes. *Id.* Analyzing the crime of recklessness, the court held

"it is clear that the offense of recklessness in the present statutory scheme must include the essential element of reckless behavior and is a general intent offense." *Id.* at 383.

The court then concluded:

"Since we have clearly held that our attempt statute can have application only to specific intent crimes, and there is no element of specific intent in the offense of recklessness, we hold that the offense of recklessness is not a lesser included offense of the crime of attempted murder and, further, that there can be no

crime of 'attempted recklessness'". *Id.* at 383.

The proposition that our general attempt statute has application only to specific intent crimes was in past years stated repeatedly. *See e.g., Yeagley v. State* (1984) Ind., 467 N.E.2d 730, 736; *Conley v. State* (1983) Ind., 445 N.E.2d 103, 105; *Smith v. State* (1981) Ind., 422 N.E.2d 1179, 1185; *Rhode v. State* (1979) 1st Dist., 181 Ind. App. 265, 391 N.E.2d 666, 668. However, the cases stating the proposition do not define "specific intent." Recently, our Supreme Court endeavored to clarify the proposition. In *Henderson v. State* (1989) Ind., 534 N.E.2d 1105, the court signaled that the terms "specific intent" and "general intent" are no longer accurate terms with respect to culpability. After noting the different ways in which courts have used the terms, and the resultant confusion, the court stated,

"In order to promote greater clarity and precision, the 'specific intent'—'general intent' terminology was abandoned in the Model Penal Code. [Citations omitted]. Indiana substantially implemented this approach with revision of its criminal code in 1976 and the statutory designation of 'intentionally,' 'knowingly,' and 'recklessly' as specific terms denoting degrees of culpability. Ind.Code § 35–41–2–2.

Subsequent cases holding that the Indiana attempt statute can have application only to specific intent crimes resulted from discussions reviewing whether the Indiana attempt statute applies to crimes requiring a culpability of mere 'recklessly,' rather than 'intentionally' or 'knowingly.' [Citations omitted.] As used in this line of cases, the term 'specific intent' was utilized to exclude application of the attempt statute to crimes requiring 'recklessly' as the prerequisite culpability." [2] *Henderson,* 534 N.E.2d at 1107–1108.

---

**2.** This statement from *Henderson* would indicate that our attempt statute applies to crimes where the culpability proved is "knowingly" or "intentionally." However, the discussion in *Rhode v. State* (1979) 1st Dist., 181 Ind.App. 265, 391 N.E.2d 666, indicates that the attempt statute has application only where the defendant

purposely intends to engage in the conduct which is prohibited or purposely intends to bring about the prohibited result. *Rhode* has been cited favorably by our Supreme Court. *See Anthony v. State* (1980) 274 Ind. 206, 409 N.E.2d 632, 636. However, see discussion in American Law Institute, *Model Penal Code and*

 Therefore, it is no longer correct to say that our attempt statute only applies to "specific intent" crimes. It is only correct to say that the attempt statute is not applicable to crimes requiring "recklessly" as the prerequisite culpability. It is understandable why one cannot attempt to engage in reckless conduct or attempt to bring about a result which is heedlessly uncontemplated. However, it is somewhat less understandable how the Court in *Humes* made the transition from this basic concept to a determination that a crime with a culpability of "recklessly" could not be a lesser offense of an attempt charge, such as attempted murder. Our interpretation of *Humes* and *Henderson* leads to the conclusion that, by charging a prospective defendant with an attempt crime, the State must prove that defendant's conduct was purposeful. Under this analysis, if the State fails to do so, it is not entitled to a conviction on the basis of conduct which is merely "reckless."

The defendant argues that *Humes* stands for the proposition that, to constitute a lesser offense of attempted murder, the lesser offense must itself be an attempted crime. However, Wells argues that in some circumstances a criminal defendant, in the course of taking the substantial step leading to the attempt charge, actually engages in specific conduct which constitutes a lesser offense. In the present case the record shows that the trial court found the defendant guilty of firing the revolver, but found that the intent was not sufficient to constitute attempted murder. Wells argues that because the trial court found that Wells fired the revolver, the only element in dispute was the defendant's culpability when he did so. Therefore, Wells concludes, in this case, the court should have considered whether his specific conduct in firing the gun was merely reckless, thereby constituting criminal recklessness.

Wells acknowledges that even if we were to find that criminal recklessness could, in some instances, be a lesser included offense of attempted murder, recklessness would not be a "necessarily" included offense. Furthermore, as we have stated, attempted murder requires a culpability allegation of knowingly or intentionally. This eliminates inclusion of recklessness as within such crime as charged. Wells, however, suggests that under an attempted murder charge if the evidence permits reasonable doubt as to whether he acted recklessly rather than knowingly or intentionally the court may convict of the reckless act. This assertion is a reference to the doctrine of "related offenses."

Indiana has not yet adopted the doctrine of related offenses. However, our Supreme Court discussed the doctrine in *Mahla v. State* (1986) Ind., 496 N.E.2d 568. In *Mahla*, the court said:

"the 'related' offense doctrine holds that *if the evidence demonstrates* the defendant may have committed a lesser offense in the course of acts that led to the greater charge, even if such offense is not inherently included in the greater charge nor in the prosecutor's factual allegations of the means by which the greater crime charged was committed, and if the defendant so requests, the trier of fact should be given the opportunity to consider the 'related' lesser offense." *Id.* at 573–574.

Commentaries, § 5.01, pp. 301–307 (1985). The Model Code states that as to an attempt, the *mens rea* is purpose. There are two possible exceptions to the requirement that the defendant's conduct be purposive. The required purpose need not encompass all of the circumstances included in the formal definition of the substantive offense. As to such circumstances it is sufficient if the person acts with the degree of culpability required for the commission of the completed crime. The second exception concerns offenses where causing a result is an element. In this situation the actor need not have a conscious purpose to achieve the particular result. A belief that the result will occur without further conduct will suffice. *Model Penal Code and Commentaries* § 5.01, pp. 297 and 301 (1985). In essence then, the conduct which constitutes the substantial step of attempt must be done with the purpose of committing the principal crime. It is in this sense, then, that the conduct must be purposive. Although Indiana has not adopted the Model Code in its entirety, it has implemented its approach in abandoning "general intent"—"specific intent" terminology. *Henderson, supra,* 534 N.E.2d at 1107. *See also State v. Keihn* (1989) Ind., 542 N.E.2d 963.

We need not decide whether a criminal recklessness conviction might be appropriate in some circumstances under a charge of attempted murder, nor whether the related offense doctrine should be adopted in Indiana. Wells was not convicted of criminal recklessness. He was convicted of aggravated battery, an offense included in the charge of attempted murder, and the evidence supports the conviction for that crime.

■ Under I.C. 35–42–2–1 (Burns Code Ed.Supp.1989), battery is defined:

"A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is: ... (3) A Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon."

In a separate argument, which we now address, Wells argues that the evidence is insufficient to support his conviction for aggravated battery. Wells first argues that the eyewitness identification of Wells as the perpetrator was questionable. On a review of the sufficiency of the evidence, this court will not reweigh the evidence nor judge the credibility of the witnesses. The evidence reflects that Corey Thomas and another witness identified the defendant soon after the crime was committed and again in court. The fact that the testimony of the witnesses may have been questioned does not render the testimony nonprobative.

■ Wells next argues that he was not sufficiently linked to the gun which was found in his car. He makes this argument on the basis that there were other passengers in the car who could have fired the shots and, when a gunshot residue test was conducted, no residue was found on Wells' hands. Furthermore, no fingerprints were found on the gun. However, William Jenkins, one of the other boys in the group, testified at trial that he had no doubt that he saw the driver of the car, who he identified as Wells, with the gun.

■ Wells also argues that the evidence was insufficient to show that he knowingly or intentionally shot the victim in that he had no conscious objective to shoot the victim, nor was he aware of a high probability that he was doing so. The trier of fact may infer that conduct was knowingly or intentionally performed from the voluntary commission of a prohibited act as well as from surrounding circumstances. *Carter v. State* (1981) 1st Dist. Ind.App., 421 N.E.2d 1151. Also, "[i]ntent to commit a battery may be determined from a consideration of the conduct and the natural and usual sequence to which such conduct logically and reasonably points." *Parker v. State* (1981) 3d Dist. Ind.App., 424 N.E.2d 132, 134. The evidence in this case shows that Wells was driving the car, was seen with the gun, and that the victim was shot in the back. This evidence supports the determination that Wells knowingly or intentionally touched the victim in a rude, insolent or angry manner. Therefore, we hold the evidence sufficient to justify the trial court's determination that defendant was guilty of battery.

Wells' argument that the court erred in failing to consider criminal recklessness as a lesser included offense of attempted murder implies that the trial court was required to convict him of criminal recklessness rather than battery. However, as stated, the evidence supports the conviction for aggravated battery. Requiring the court to consider criminal recklessness as a lesser included offense in this case would invite a trial judge to do what is not permitted of a jury, i.e., to reach a "compromise verdict". *See Jones v. State* (1982) Ind., 438 N.E.2d 972; *Hester v. State* (1974) 262 Ind. 284, 315 N.E.2d 351. We therefore hold that the trial court's failure to consider criminal recklessness as a lesser included offense of attempted murder was not reversible error, if error at all.

## II

■ Wells argues that the trial court erred in refusing to allow him to impeach one of the State's witnesses with evidence of a prior juvenile delinquency adjudication. Wells argues that the prior juvenile delinquency involved a crime of dishonesty,

which, under *Ashton v. Anderson* (1972) 258 Ind. 51, 279 N.E.2d 210, would generally be admissible to impeach the credibility of the witness if the crime of dishonesty resulted in a criminal conviction.

The law in Indiana is clear that a witness may not be impeached by a prior juvenile adjudication because a juvenile adjudication does not constitute a criminal conviction. *Logston v. State* (1989) Ind., 535 N.E.2d 525; *Perkins v. State* (1985) Ind., 483 N.E.2d 1379; *Pallett v. State* (1975) 269 Ind. 396, 381 N.E.2d 452. Conceding the existence of this body of law, Wells argues that Indiana law and its underlying policy have not adequately considered the impact of *In re Winship* (1970) 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. In *In re Winship*, the United States Supreme Court held that the Due Process Clause of the United States Constitution requires the State, in a juvenile delinquency proceeding, to prove the guilt of the juvenile beyond a reasonable doubt. Wells' argument is essentially that, because juveniles are entitled to the same procedural protections as adults, a juvenile delinquency adjudication is the same as a criminal conviction for purposes of thereafter challenging the credibility of the juvenile. In other words, the same concern for character which underlies the *Ashton* case is present when the juvenile has been adjudicated to be delinquent on the basis of conduct which would constitute a crime of dishonesty or bad character under *Ashton*. We disagree.

The fact that the United States Supreme Court in *Winship* determined that juveniles were entitled to due process protections, does not lead to the conclusion that a juvenile delinquency adjudication is the equivalent to a criminal conviction for impeachment purposes. The underlying policy of juvenile law is to protect the juvenile. *Pallett, supra*, 381 N.E.2d 452. The goal of a juvenile proceeding is to reform juveniles while they are still young and before patterns of criminal behavior become entrenched. To allow a witness to be impeached by evidence of a prior juvenile delinquency adjudication would undermine these goals. The law takes into account that juveniles are immature and may make

mistakes which they possibly would not make as adults. Therefore, it is improper to assume that the credibility of a witness may accurately be determined by specific instances which occurred in childhood. The policy that a witness may not be impeached by a prior juvenile adjudication is, therefore, a sound one. The trial court committed no error in refusing to permit impeachment of a witness by evidence of prior juvenile adjudication.

### III

■ Wells next argues that the trial court erred in permitting Jack Hamby to testify as an expert with respect to gunshot residue. Specifically, Wells argues that although Hamby was employed as the Laboratory Director of the Indianapolis/Marion County Forensic Services Agency, he did not have the educational background, such as a degree in chemistry, to be considered an expert on the subject of gunshot residue. Wells also argues that Hamby lacked personal knowledge of the specifics of Wells' case.

■ The determination of whether a witness is competent to testify as an expert is left to the discretion of the trial judge. *Travelers Indemnity Co. v. Armstrong* (1982) Ind., 442 N.E.2d 349. The determination is based upon the education or special experience of the witness in the particular subject matter. *Moody v. State* (1983) Ind., 448 N.E.2d 660. Although Hamby did not have a degree in chemistry, the evidence shows that he did have experience in firearm/tool mark identification and forensic ballistics. His job was to manage and direct the activities of all the forensic scientists and criminal ballistics specialists in the laboratory. He was previously employed in the State Laboratory System in Virginia and in the United States Army Criminal Investigation Laboratory. Finally, he testified that he received training at the FBI Academy in gunshot and primer residues and maintained his skills by reading current literature regarding gunshot residue. Therefore, Hamby's special experience was sufficient for the court to allow

Hamby to testify as an expert. The fact that Hamby did not personally supervise the testing in this case is not disqualifying. His testimony concerned residue testing and variables which affect such test results. This evidence was appropriate in light of Wells' assertion that the absence of residue on his hands leads to an inescapable conclusion that he did not fire the weapon. Wells has not demonstrated that the trial court abused its discretion in qualifying Hamby as an expert in the area of gunshot residue testing.

## IV

Defendant argues that the evidence presented at trial was insufficient to sustain his conviction for battery, a class C felony. However, as we have already discussed under Issue I, our review of the record shows that probative evidence was presented during trial upon which the court could have found Wells guilty of aggravated battery.

## V

■■■ Wells argues that the court committed fundamental error when it imposed an enhanced sentence based upon factually incorrect information. The court imposed an eight year sentence on Wells, including the five year presumptive sentence for a class C felony, plus three years on the basis of aggravating circumstances.

Wells specifically argues that the following three statements by the prosecutor during the sentencing hearing were factually incorrect: (1) that the sentencing report indicates a one year period of time in which Wells did not attend school, (2) that, although Wells claimed to be an active member of a certain church, the presentence report indicated that the pastor of that church, when contacted, could not recall Wells' name, and (3) that defendant's "Sentencing Memorandum" appears to be in direct conflict with the presentence report.

■■■ The trial court's determination of an appropriate sentence is discretionary, and is reviewable on appeal only if the sentence appears manifestly unreasonable. *Scruggs v. State* (1986) Ind., 489 N.E.2d 935; *Bryan v. State* (1982) Ind., 438 N.E.2d 709. The determination whether the presumptive sentence should be enhanced or mitigated is also discretionary. However, if the court in fact enhances or mitigates the sentence, the factors used in making that determination must be set forth in the record. *Gilley v. State* (1989) Ind., 535 N.E.2d 130. In the present case, the court set forth the factors it considered as aggravating factors. In this regard it is clear that the court did not consider the information which Wells alleges to be factually incorrect.[3]

Moreover, the record reflects that the prosecutor's statements were based upon information appearing in the presentence report. At the sentencing hearing, the court asked the defendant if he had had a chance to review the presentence report with his attorney. Wells indicated that he had. The court also asked specifically: "Alright, in the body of the report itself is there any factual information that you wish to correct?" Record at 519. Wells' attorney responded, "Your Honor, it's my understanding from conferring with Mr. Wells that the factual information is essentially correct." Record at 519–520. Therefore, Wells was clearly given the opportunity to make any necessary corrections to the factual information in the presentence report. We, therefore, perceive no error in the sentencing of Wells.

For all the foregoing reasons, the judgment is affirmed.

SHIELDS, P.J., concurs with separate opinion in which STATON, J., Joins.

SHIELDS, Presiding Judge, concurring.

I separately concur in the included offense aspect of Issue I of the majority opinion in order to record my disagreement

---

**3.** Wells does not otherwise challenge the adequacy of the factors stated as aggravating factors.

with incidental comments that appear in the opinion.

*Humes v. State* (1981), Ind., 426 N.E.2d 379 is controlling. Therefore, unquestionably the trial court did not err in refusing to consider criminal recklessness as an included offense of the charged attempted murder. Furthermore, the rationale of *Humes* is apparent. The supreme court concluded the culpability of "recklessly" is not inherently included in the culpability of "intentionally" or "knowingly." In other words, it is possible to have an "intentionally" or "knowingly" culpability and yet not have a "recklessly" culpability. The culpabilities of "intentionally" and "knowingly" are completely distinct from the "recklessly" culpability because they address different concerns. "Intentionally" and "knowingly" concern the actor's consciousness or awareness of his conduct, while "recklessly" concerns the actor's disregard for the harm which might result from his conduct. Therefore, an offense that requires a culpability of "intentionally" or "knowingly" will never include an offense that has a "recklessly" culpability unless it is charged as such.

Further, in my opinion, our supreme court implicitly rejected the related offense doctrine when it held the State may exclude even a necessarily included offense from the fact finder's consideration by the manner in which the information charges the principal offense. *Dorsey v. State* (1986), Ind., 490 N.E.2d 260. It is inconsistent to hold the State may exclude a necessarily included offense and yet permit the defendant to interject the same excluded offense by tendering an instruction which would allow the jury to consider the offense as an alternative to the charged offense.

I am concerned the majority's statement the State must prove purposeful conduct by a defendant charged with an attempt crime will be misunderstood. Therefore, I want to emphasize that, by that statement, the majority is saying the substantial step conduct, which must be done intentionally or knowingly in the crime of attempt, must be done with the purpose of committing the principal crime. The majority is not saying

there is yet another culpability, the culpability of "purposeful" or "purposely", etc.

Also, the *Model Penal Code* is instructive and a valuable reference. However, we must bear in mind our legislature chose not to enact the model code and acknowledge and respect that decision in so far as there are differences between the model code and our criminal code.

I find no merit to Wells's Issue I because there is no circumstance under which criminal recklessness can be an included offense of attempted murder unless, of course, criminal recklessness is charged in the body of the attempted murder charge. It was not. I do not agree with the majority's resolution of the included offense issue on the grounds there is no error because "Wells was actually convicted of aggravated battery and the evidence supports the conviction for that crime."

I otherwise concur in the majority opinion.